We'll hear argument next in Case 15-458, Dietz v. Bouldin. Mr. Shanmugam. Shanmugam, Thank you, Mr. Chief Justice, and may it please the Court. When a judge discharges a jury after it reaches a verdict, the jury's service is at an end and the jurors return to being ordinary members of the public. This case presents the question whether a district court has inherent authority under Article III of the Constitution to recall discharged jurors for further service in the same case. Here, for the purpose of deliberating anew and reaching an entirely different verdict. The answer to that question is no. The established rule at common law forbade the recall of discharged jurors. In numerous respects, the Federal rules of procedure reflect the understanding that a district court's authority ends at the point of discharge. Roberts, I thought you had a clear right-line rule until I got to page 9 of your reply brief, where you say a jury may remain effectively undischarged despite a judge's pronouncement of discharge. There are cases where you agree that if the judge says you're discharged, they're not really discharged, and the judge can say, oh, come on back, I've got something else you've got to do. Shanmugam, Mr. Chief Justice, our rule is clear. It's a rule that a district court lacks the authority to recall discharged jurors. The question that we discuss at page 9 of our reply brief is the question of what the definition of a discharge is. And let me offer you that. Roberts, that's pretty lawyerly. Shanmugam, Thank you, Mr. Chief Justice. Roberts, saying any time you're discharged, it's over. Now, discharge may not mean discharge in every case, because you recognize that there are cases where the judge says you're discharged, but you would allow them to come back. Shanmugam, And that is simply, Mr. Chief Justice, because we believe that discharge is an act. It's not just a pronouncement. And that's what the vast majority of the lower courts have said. They have said that a jury is discharged when, having been released from service, the jurors have left the judge's presence in control. Roberts, Okay. Presence in control. Now, that's the key distinction that you have? Shanmugam, That is what lower courts have said, and we're certainly comfortable with that distinction. And so if there's still – if they're still in the courtroom, you can say, well, wait, wait. Hold up. You've got to come back and do this. Roberts, Yes, that is correct. And that is basically the line that most law courts have. Roberts, And what if they're in the hall outside the courtroom? Nothing's happened. They're all still there. Shanmugam, The hall is outside a judge's presence in control. And the only cases where jurors have been permitted to be recalled outside the courtroom under this standard are cases where the jurors say have gone back to the jury room. And I think it's fair to say under those circumstances that the jurors are no longer – are still within the judge's presence in control. Certainly, we don't think that that definition could be stretched to facts like this case, where the jurors have not only left the courtroom, but at least two of the jurors have left the immediate vicinity of the courtroom, and it appears from the record as if one of the jurors has left the courthouse altogether, and there's no dispute. Roberts, What they're worried about with the rule about discharge and then bringing them back is that the jurors may have talked to somebody about the case, heard something about it, had information that's going to be prejudicial to the defendant that they shouldn't have gotten. Why doesn't it make sense to say, well, if they're right out in the hall or, you know, down the hall, bring them back in and ask, just as the judge did here. Has he talked to anybody about the case? Shanmugam, Mr. Chief Justice, I think that the courts that have adopted that functional definition of discharge, that have looked at discharge as the point at which jurors have separated or dispersed, have focused on the potential for influence, not the fact of influence. In other words, those courts aren't applying, aren't engaging in a prejudice inquiry under the guise of defining discharge. Instead, what they are saying is, in essence, the point at which the jurors are no longer together as a unit, and again, no longer within the court's instruction and direction, is the point at which they've been discharged. And I think that that has proven in the case law to be a relatively easy line to apply. And many of the cases on which Respondent relies are cases in that category. In other words, cases where courts, at the same time as they have recognized the common law rule, have applied this functional definition of discharge. Now, again, we think that this case plainly does not fall even within that somewhat broader definition, and the issue of whether the jury has been discharged in this case is obviously not in dispute before this Court. But I do think that in practice, if this Court were to adhere to the common law rule, that definition would be pretty easy to apply in practice, and there aren't a lot of lower court decisions that seem to have struggled with the application of that principle. And once you take those – I was just going to say that once you take those cases away, Respondent really does not have very much by way of common law authority on which to rest. Sotomayor, are you confirming that you're not raising a constitutional barrier to the recall of juries? Yes. I think we have consistently made the point all along that this issue obviously implicates the underlying right to a fair trial. And the rule that we're articulating is certainly protective of that interest. But it doesn't in any way – All right. But not directly. Yes. That is correct. Sotomayor, in most fair trial analyses, we look to prejudice. You don't get a fair trial unless there's a likelihood of prejudice. So why is it that we would make an absolute rule barring the recall of the jury, except in the circumstance you're conceding? Why don't we go back to what the Chief Justice said? Why aren't we looking for more specific prejudice? Justice Sotomayor, that is for the simple reason that we believe that this is really a question about a district court's authority. And in analyzing whether a district court's authority is inherent to the rule, there's no statutory bar. Well, that is correct, and there is no explicit bar in the rules. But when you are considering whether a court has inherent authority under Article III of the Constitution, the three considerations on which this Court has relied are, first, the history. And we believe that far from there being a long history in Respondent's favor, that the history really points decisively in our direction. The Federal rules, and while it is true that the Federal rules do not explicitly prohibit jury recall after discharge, time and again, the Federal rules indicate that a court's authority is limited at the point of discharge and that a court's the Federal rules also provide specific and concededly adequate remedies for the defect at issue here, an invalid or ambiguous verdict. Well, we don't have a specific rule that permits district courts to rescind any order they've issued. But we've routinely, through history, permitted district courts, when they think they've entered an erroneous order, to just rescind it. Why isn't this one of those orders? District courts have authority, to be sure, to rescind certain types of orders. In our reply brief, we point to various examples of orders that cannot be rescinded, such as a decision by a district court to transfer venue, a decision by a district judge to rescind. But those are statutorily barred from happening. Well, I don't think that that's right. I think that courts have said that those orders are essentially like the order at issue here, final in the relevant sense. In other words, a district court's authority is at an end when a district court transfers the case to another district, when a judge recuses himself or herself, when a district court enters final judgment over part of a case under Rule 54b. So to use a final judgment, the rule is everything is interlocutory. So when the judgment is entered, that's it, that's an end of the case, a district court loses authority over it. But here, we haven't had a final judgment. Yes, the jury was discharged, but there's no judgment that's been entered in the case, so why doesn't the judge retain authority up until the point where he enters when judgment is entered on the jury verdict? And, Justice Ginsburg, all of the examples to which I just pointed are orders that, notwithstanding the fact that final judgment in the case has not yet been entered, are nevertheless orders that the entering judge cannot revoke. And so, too, here, our submission is a quite straightforward one. It is that the act of discharge denotes the point at which a district court's authority over the jury is at an end and the jury's authority over the case is at an end. And to finish my answer to Justice Sotomayor about the Federal rules, I think it is critically important here, for purposes of analyzing whether there is inherent authority, that there are specific and conceitably adequate remedies for correcting an invalid or ambiguous verdict, both before discharge and after discharge. So first, before discharge, we certainly concede that before the jury is discharged, a district court has the authority to recall the jury, and it's not even recalling the jury. It's simply re-instructing the jury and ordering the jury to engage in further deliberations. That conspicuously did not take place here, notwithstanding the fact that both the district court and Respondent's counsel acknowledged that a verdict of $0 would be invalid. After discharge, there are actually two remedies. The first is the remedy of a new trial, and we certainly think that that has long been the remedy for the type of defect at issue here, a verdict that is contrary to the weight of the evidence, and indeed, not only contrary to the weight of the evidence, but contrary to any of the evidence. The other remedy, which I do want to focus the Court's attention on, is the remedy that is provided in Civil Rule 60A, and that is the remedy that enables a district court to essentially conduct a streamlined proceeding to correct clerical errors and oversights and omissions in a judgment. And so in the other major category of cases on which Respondent relies, those are cases in which there were simply mistakes in the original verdict, cases where two verdict forms might have been found in the record or cases where the recorded verdict was not. Kennedy. In your view, let's suppose the jury were truly discharged and they were away for a day, but the judgment hasn't been entered yet. Could the judge amend the judgment or state in the judgment that $10,000 be awarded? No, for the simple reason that I don't think you would know what a correctly instructed jury would have done in this circumstance. And indeed, in this case, the further complication was that the jury was required not only to award the $10,000 in stipulated damages for past medical expenses, but also to award some amount for future expenses. And indeed, when the jury came back, it returned a verdict of $15,000. So I don't think that that could have been done in this case. Roberts. And I wonder if the jury is discharged and the judge is looking at the verdict and, I don't know, shows it to lawyers and says, okay, it's $28,000. The lawyer says, no, that's a 3. It's $23,000. I mean, can the judge just stop the jury and say, well, here, what is it? Is it 28 or 23? The proper remedy in that circumstance, Mr. Chief Justice, would be the one that I've just suggested, namely a proceeding under Rule 60A of the civil rules. And in aid of that proceeding, a judge has the ability to call back the jurors, but not as a jury. That's the critical point. It can call back the jurors essentially as witnesses, and the judge could subpoena the jurors if necessary and take affidavits or oral testimony from the jurors to correct the verdict. And again, I think that that's an answer to the other significant category of cases that Respondent relies on. Those are cases where you have these various types of clerical errors, mistakes, a verdict being recorded that's different from the verdict that was actually orally delivered in court. And all of those cases under our interpretation are readily correctable under Rule 60A in what does not need to be a particularly complex proceeding. Roberts. Roberts. In a certain sense, I don't know if I can say it, it's certainly not a clerical error, but it is a simple error. I mean, the point is the judge told the jury, you have to award this amount in medical expenses. And the jury didn't. Why doesn't that fall under a different category than, you know, questions of certainly guilt or liability or no liability? So, Mr. Chief Justice, I think it's certainly fair to say that the error in this case was an obvious one. Indeed, it was so obvious that less than an hour earlier when the jury issued a note asking about whether the damages had already been paid, again, both the district court and Respondent's counsel acknowledged that if this was heading in the direction of a $0 verdict, that verdict would be invalid. But I think it's critically important to realize that we're not dealing with a case here where the verdict is somehow facially invalid. I mean, if you look at the verdict form, which is at page 22A of the petition appendix, the four corners of that verdict form are fine. The verdict simply says we're finding in favor of a Petitioner, but we're awarding $0. This is a case that falls into the category of cases where the verdict is contrary to the weight of the evidence. And again, the remedy for that, both under the Federal rule and under the Federal rule, is that the verdict is invalid. Roberts, what you mean with respect to the amount they were obligated to award? Well, that is correct. Well, with regard to the award more generally. In other words, they could not have awarded $0 as a matter of law by virtue of Respondent's stipulation. But the only sense, the only sense in which it was contrary to the evidence was that they didn't award the $10,000, they awarded $0. Yes. Well, plus some amount for future medical expenses. But my point is simply that even at common law, the remedy in these circumstances has always been a new trial. So in other words, Rule 59B is not some newfangled invention. If you go back and look at the cases prohibiting the recall of discharged jurors, going all the way back to Loveday's case, the case that we cite from the Exchequer from 1608, those cases say that the remedy in these circumstances is a new trial. May I ask you about the basis for the legal rule you're asking us to adopt? Let's just assume, for the sake of argument, that there isn't any Federal rule that does this question. So then your argument seems to come down to two points. One is that there's nothing that gives the expressly or maybe even by implication gives the trial judge the power to do this. But trial judges do hundreds of things that are not expressly authorized by rule. So what we certainly couldn't adopt that rule. The Federal trial judge can't do anything unless there's a rule that says that the judge can't do it. Trials would come to an end. The other is based on the common law. But there were all sorts of common law procedures and procedures that continued into the 19th century that had been abandoned in modern practice. So you want us to say that if there was an established practice at common law and into the maybe the late 19th century, trial judges today in the Federal courts must follow that rule unless there's something that gives them a dispensation. So, Justice Alito, we're certainly not here arguing that there has to be an express grant of authority in the Federal rules. And it certainly is true that Federal courts have broad authority to structure their proceedings as they see fit while the case is pending. And I think if you identified various specific procedures, you would find that they would comfortably meet the standard for inherent authority. So to take the government's seemingly favored example, in limine rulings by district courts, district courts obviously have the inherent authority and, indeed, the express authority to make evidentiary rulings. And the question of the timing of those rulings is simply incident to the exercise of that authority. Our point is simply that to the extent that a court has that broader authority, it has never been understood to confer the specific authority to recall discharged jurors. And to get back to the Federal rules, because I really don't think that this is a case where the Federal rules are silent on the issue. Alito, before you do that, what rule should we adopt with respect to common law practices, common law trial practices, or 19th century trial practices? Courts have to follow them unless there's something that says they don't? No, not at all. And the perfect example of that is sequestration. Again, certainly a district court has the inherent authority to sequester the jury, but a district court is not bound to adhere to that practice simply because that was the practice in 1789. Our argument is simply that you have to look, under this Court's decisions on inherent authority, to the history, and in the absence of a long history, you should not be recognizing an inherent authority, at least absent some necessity. And that's really what this case boils down to. Respondent and the government's argument, at the end of the day, turns entirely on considerations of efficiency. It turns on the argument that it's going to be more efficient in at least some of these cases to recall the jury rather than to conduct a new trial. But it has to be absolutely necessary? What should the trial judge at one point, jurors weren't allowed to eat during deliberation. So what did the first trial judge who said it might be a good idea to allow them to have lunch, what, was that absolutely necessary? What would be the process? And this Court really has the authority to permit the jury to eat. And that just, and this just sort of goes back to the question of, you know, what is the affirmative source of the authority here? And this Court has never in its inherent authority cases, as Respondent Frehley concedes at page 39 of his brief, said that efficiency alone is a sufficient justification for the exercise of inherent authority. And again, this is where the Federal government's argument is. Breyer. Why not? Why not? Why isn't it? I mean, it's very expensive to have new trials. Hardly anyone can use a court. Even calling all these jurors back as witnesses costs money. And you're arguing that rather than it's going to, okay, that's their efficiency argument. And the difference here turns on whether the juror is still in the courtroom or whether they've gone into the hallway and is asked, did anybody talk to you? No. Okay? Now, if it saves a lot of money and that's the only difference, why don't we say the efficiency argument's what counts? It matters to people. It means whether they can get their cases resolved or not. So, Justice Breyer, in analyzing questions of inherent authority, this Court has never engaged in policy balancing. It has focused on three considerations. It's focused on history, the rules, and on necessity and the availability. We never have a look it up, but why don't we begin? Well, if this Court wishes to engage in policy balancing, I think it's going to be a good idea. Oh, no, it would only be where it saves people a lot of money, this particular exercise, and there isn't really much reason in terms of fairness not to do it. And I'm not sure that that is always going to be true. And I think the Respondent and the government in their briefs try to sort of set up this dichotomy between technical defects in the verdict on the one hand and burdensome new trials on the other. With regard to technical defects in the verdict, truly technical defects, those can be corrected short of a new trial under Rule 60A. And recall of the jurors is going to be burdensome in cases such as this one, where the jury is being asked not simply to correct a technical defect, but to deliberate a new and to reach an entirely different verdict. And I would respectfully submit that of all of the cases in Respondent and the government's briefs, they will be hard-pressed to identify any case that actually fits that pattern, where a district court is being told or a district court is telling a jury to go back and reach an entirely different verdict. But with regard to the policy considerations, I do think that there are policy considerations that strongly support the Brightline rule that we are advocating. As we point out in our brief, fairness and finality considerations point strongly in our direction. And while it is certainly true that district courts are able to engage in prejudice inquiries, we think the risk of prejudice is particularly great in this context. And at least the government seems to recognize as much when the government attempts to cabin its rule under the guise of the abuse of discretion standard in various respects. And I'll come back to the defects with that proposed rule in a minute. But the only other thing that I would say with regard to the policy balancing is that I think that there's a very strong workability argument in support of our position. If you accept what I understand to be Respondent's position, in other words, to confer on district courts essentially an unbounded power to recall discharged jurors subject only to the constraints of the outer bounds of due process, courts and litigants are going to have a very strong incentive to pursue this option to correct all sorts of errors. And I think this case actually illustrates the problem. There's a lot of back and forth in the briefs about who should have raised this issue before the district court before discharge. Well, in a case like this one, my co-counsel, Mr. Angel, would have had no incentive to raise this issue before discharge for the simple reason that the jury was last seen returning a verdict that not only did not award the minimum amount, it awarded nothing at all to our shared client. By contrast, in cases such as this one, parties like Respondent, upon recognizing that there is an obvious error with the verdict, are going to have every incentive to pursue recalling the jury as an alternative to a new trial, because after all, for the same reasons that my co-counsel probably didn't like this jury very much, Mr. Katyal's co-counsel presumably thought this jury was the best jury on earth. And so in every case the jury was the best jury on earth. Roberts, the policy arguments, I think, ring a little hollow. This is just not going to come up very often, right? So the idea that this is going to cause all sorts of problems, only in the rarest, rarest case. And yet, when it does come up, we have this concern that Justice Breyer pointed out, that it's a big waste of money to have the jury have to start and, I guess, a new jury, right, have to be a new jury, start all over again. But I think, Mr. Chief Justice, that that counts in our favor. I think we would freely acknowledge that this issue doesn't come up all that often, though it does seem to come up with some frequency in the State courts. And there are a number of cases cited in the briefs going back all the way to the early days of the Republic. But I think what I would say is that to the extent that the Court thinks this isn't a problem that comes up very often, it indicates to us that it is simply not worth a candle to adopt either Respondent's approach, which would really create a motion to recall the jury as an alternative to the remedy that's actually provided in the rules, a motion for a new trial, or the government's approach, this sort of presumptive one-hour limit. We simply don't think that there is any need for this Court to move the line from the point of discharge to the point of discharge plus one hour and what other – whatever other limitations the government wants to impose under the abuse of discretion standard, particularly because a court will have the ability to correct obvious defects before discharge. And if this Court adopts our rule, it will, if anything, create incentives for courts and litigants going forward to pause for a moment at the point at which the jury's verdict is returned and published before discharge to determine whether there is an obvious error that can be corrected consistent with the Court's power to do so prior to discharge. And we freely acknowledge that if a court wants to, for instance, take a short recess at that point, it can do so. And to the extent that the specter is given of elaborate new trials and complex cases where the trials have been particularly lengthy, I would respectfully submit that it is precisely in those cases where courts and litigants ought to have the incentive to do that. And the last thing I would say before reserving the balance of my time for rebuttal to get back to Justice Alito's question is that with regard to the Federal rules, we're not just pointing to the specific rules like Rule 48 and Rule 51, the rules on polling and the rules on instructing juries. We're pointing as well to Rule 59A2, which is the rule that says that in non-jury trials, a court has the authority upon receiving a motion for a new trial to conduct further proceedings to take evidence to reach a different judgment, but conspicuously does not confer any such power in jury trials. And that, to us, while not an express prohibition on the recall of discharged jurors, is the next best thing. I would respectfully reserve the balance of my time. Roberts. Thank you, counsel. Mr. Katyal. Katyal, thank you, Mr. Chief Justice, and may it please the Court. As the Chief Justice and Justice Breyer have indicated, under Petitioner's rule, a trial lasting a week, a month, a year would have to be entirely redone just because one juror took one step outside one courtroom one minute after a verdict. Now, Petitioner says that new trial is required not because of anything in the Constitution or Justice Sotomayor's actual prejudice, but because of inferences that he draws from the rules. Sotomayor, my problem is I have problems with his rules, I have problems with yours. So you've got to – and I think it's some of what the government is saying. Putting aside the questioning here, which troubled me in its adequacy, okay, it's not uncommon, it was perhaps uncommon in this case, for families to be crying outside of courtrooms, for families to be talking to each other and visibly expressing either their pleasure or displeasure at what a jury did. It's not uncommon for court – correction officers in the State of New York to get very close to juries when they used to sequester them, but even today. And a corrections officer saying something like, good job, guys, at the end of the verdict, okay, when the jury's discharged. There is expressions in the courtroom. If we do a prejudice test, how are we going to ensure that that concept of a fair trial is wholesome enough to not permit what I consider some – could be potentially great contamination of the jury and of their emotional state? I mean, there are juries all of the time who have the night to think about a case who change their mind. And the next day they're reaching out to the court or they're reaching out to one of the party's attorneys and wanting to undo the verdict. What's the rule that takes care of all of those things? Is it a doubtless ability to recall juries? What are the circumstances a court should look at? What's your rule? Give me a rule that's a – Justice Sotomayor, I'll give you a rule and then hopefully I can explain why I think his rule is really problematic. So our rule is very simple and deals with all of those things, which is that power after discharge is parallel to the power before discharge. So all of the things that – Sotomayor, but you're making that up. No, no, no. And it doesn't take care of the things I talk about. Oh, it does. I think it does, because as this case comes to the court and the reply brief at page 13 admits this, the jury could have been resubmitted with this and had all the things the jury – the folks crying outside, all of those things could have happened if the judge just used a different word, recessed, instead of discharged. We are not here defending some rule that says – Well, it depends on the courthouse. In most courthouses, certainly the Federal system and a lot of State systems, the jury doesn't get to go out and mix with the public. Quite right, Your Honor. But all I'm saying is whatever the rules are for pre-discharge, those rules are just a discharge of a couple of minutes where there is no prejudice to the other side. And I think courts are well-versed in kind of evaluating those prejudice inquiries. They do it all the time. The government's really good at those. But you're not a – Would your rules apply equally in a criminal case? We think that they – that you don't have to get into it, but we do think that they generally do here. And that underscores – What about impaneling a jury? Suppose the judge impanels the jury and then decides that the impanelment was defective, one juror wasn't there, and three hours later re-impanels the jury. Is that proper? Well, I think in that circumstance, again, it's, you know, the discharge has nothing to do with it. It's either proper or not. What about impanelment? Right. And so I don't think that, you know, we have a position on impanelment. Our position is just simply whatever – And you say that what – in your brief you say whatever the judge can do, he can undo. Correct. Which is a sweeping statement when we talk about – but in double jeopardy rules, double jeopardy applies the moment there's an impanelment. Absolutely. I should have said that, Justice Kennedy. And I'm not sure how your rule would accommodate that principle. So we have a very limited undue principle. It is not anything that goes – anything goes, but rather it's tempered by the Constitution and by this Court's inherent power cases which say it's got to be a reasonable exercise. So for the answer to that is it's a double jeopardy violation, it's a double jeopardy violation, and the discharge has nothing to do with it. Now, if I could go back and explain why I think their rule is really problematic. Well, but your principle is whatever the – you say whatever the judge can do, he can undo. What a court can do, it has an inherent power to undo. That's – but we do make very clear that it's tempered by the inherent power limitations of this Court, which are very extreme. And so I don't think that we're here saying that you can undo anything. We're saying it's got to meet the Deegan and Chambers test. The Chambers test is at page 49 and 50 of the opinion, which says that it's got to be actually a legitimate response. And I think Mr. Shanmugam is absolutely wrong when he says, oh, if there's an alternative, that means there is no inherent power. Chambers, on those two pages, is absolutely crystal clear, the existence of an alternative doesn't deprive inherent power. Now, our concern about their rule, and again, going back to the first questions the Chief asked, it's not even clear what their rule is, because for most of this case, before the entire Ninth Circuit and the Blue Brief, the rule was a magic-words rule, which was discharge ends things. Now the word discharge ends things. Now the rule happens to be a geographic limitation. By the way, his reply brief at page 10 has yet an entirely different rule, which is the boiling game rule, which is you can, even after discharge, even the next day, have the jury come back and reorder and impose an additional verdict. Roberts. Roberts. I'm not sure you're the one that should be complaining about a rule that's not very clear. I mean, yours is basically look at all the circumstances, have the judge ask the questions, and particularly, it's a variant on what I asked earlier, particularly if this doesn't come up very often. It seems to me to be, make some sense to say it's a bright-line rule. We don't want to waste courts' time, you know, figuring out whether there's adequate prejudice, how far is too far. Let's just have a clear rule. The judge says discharge, you're discharged, and if he's made some mistake, you know, he'll be more careful in the future. Mr. Chief Justice, our rule is consistent with the way Federal courts deal with jury issues, the rules and the inherent power cases generally, which is to leave this and the hundreds of decisions to district courts to handle in the first instance. And I think it would be a terrible idea to adopt a bright-line rule for a, this is a solution in search of a problem. It doesn't come up very much. It's never come up, all his worries in the Federal system, even once. He can cite to you two cases in his reply brief saying there's any problem. One is a California case that he cites and he tells you that there's been a discharge of five months in a recall. He doesn't tell you that that case was reversed by the California Supreme Court for exactly the concerns we're talking about, which is it might be dangerous  Sotomayor So what are the principles we tell? I mean, look at the totality of the circumstances. It's a great test, but it doesn't give much guidance to courts below. Tell me what the guidance is that we give. I'm thinking of something like if they've been exposed to any extraneous reactions, words, information, conversation, I can go on with a list of verbs, but you can't recall it, are there any limits to this power? There are strong limits, and those limits are found, for example, in the Ninth Circuit's decision below, which says that it's got to be a short recall, there's got to be an inquiry into whether or not there's contamination, and if there is any contamination, absolutely. And short is short. Well, I think, again, that should be left to the district court's decision to discretion for the following reason. Cases vary in all sorts of ways. Sometimes the trial lasts a year, a year and a half, Justice Sotomayor, and, Rousseau, I think your trial was one and a half months. And you wouldn't want to necessarily throw something out for quite the same length of time, and in some cases, the jury is just asked a very simple question that they have to answer, and so it might be something that could be more than a couple of minutes. So I think that's what I'm trying to say. Ginsburg's case is that you wouldn't draw a line at, say, the courthouse door. Once they leave the courthouse, that's it. But while they're in the court, it's okay. I think the Federal case law, and this is clear, actual prejudice is the inquiry, and if you adopt his test, what is that door? Do you have to have an NFL referee to adjudicate whether or not someone's outside the threshold of the door or inside? I just think that gets very unworkable. I think there's no reason to do that. Ginsburg's case is that you have to question each juror. Now, when you went out on the street, did you talk to anybody? I think that would be preferable, but I do think an en masse, you know, questioning depending on the circumstances of the case may be appropriate. So something like this, in which it's just a couple of minutes, and there's no allegation whatsoever of any actual prejudice that anyone talked to anyone besides the clerk of the court, you know, I think that that's perfectly appropriate. But in a different case, absolutely, it would be different. Kagan. Kagan. Kagan. I wonder whether there's one difference between the post-discharge case and the pre-discharge case. You've been talking a lot about contamination and outside influence, and there it seems as though the inquiry is roughly the same. But there's another way in which the post-discharge case seems different, which is that once you are discharged, you just take off your juror hat psychologically, mentally, and you start thinking about a case in a different way. And you start even wondering whether when you had your juror hat on, you were thinking about it in the right way. And I wonder whether that is a difference that makes a difference in this context. Katyala, I can certainly see a Federal court, particularly if the length of discharge is lengthy, getting into that and saying that's why we're not going to have a recall. But, you know, no Federal court ever has adopted the version of the – has adopted either that argument or Mr. Shanmugam's argument and said the courts lack authority for that reason. Now, maybe the Rules Committee at some point wants to get into that and say we're really concerned about people taking their hat off in this psychological difference. But that is not something either in the rules, and it's certainly not something that this Court's inherent power to do. Sotomayor, that's not going to help State courts if we adopt a Federal rule. I mean, I'm looking for a principle that would apply for where this problem occurs the most often, which is State court. So tell me how we rule in a way that, because this is what I mentioned before, how many jurors change their mind. Katyala, with respect to State courts, I think, at least as I understand the new position now, nothing this Court will do will solve that particular problem. So because this is coming up, as he characterizes it, an Article III issue. I think State courts overwhelmingly have solved this problem. Twenty-one different States permit recalls, only 11 do not. And, yes, it's true, in the old common law, we had a difference in very old times. But starting in 1839, courts have permitted recall, and the Federal system has permitted recalls. Kagan, I guess in answer to my question, I was not looking so much for a historical answer. You both have your historical arguments. But for an answer about why we shouldn't take this very seriously and think that it makes the post-discharge context different from the pre-charge pre-discharge context, where the inquiry that we do in the pre-discharge context about have you talked to anybody, have you read a newspaper, just really doesn't get to the heart of the matter in the post-discharge context, which is that you've just taken off your juror clothes and maybe started thinking about what you did when they were on in an interrogation. I think district courts do that all the time, which is why recalls don't happen, except in circumstances like this and why you can't point to any abuse. I caution the Court because of this psychology, if the Court is animated by the psychological concern, about adopting some one-size-fits-all solution for the entire country in undoing trials that sometimes are lengthy, sometimes impose huge psychological costs to those who testify before them. For example, the first time I was before you this year in Kansas v. Carr, the Court was very concerned about the Wichita murders and the witnesses having to re-testify. But that's his rule. He's going to force redo in all of these cases. That is, you know, that is certainly not the efficient result, and we're certainly not saying efficiency is the only thing, as our brief makes clear on the page you see. Ginsburg, when the jurors come back, do they get re-sworn? I mean, the judge has just said, thank you very much for your service. You are now discharged. You are no longer jurors. Then he recalls them. Do they get sworn in again as jurors? I think that would be the preferable thing to do, but again, in response to Justice Kennedy, what you were happening in a case like this is they are undoing their earlier pronouncement of discharge, returning it to the status quo ante, and then you have that swearing again that you have effectively that first swearing working out. And here, as this case comes to the Court, there's no allegation whatsoever that there was any prejudice to Mr. Dietz from the recall. Again, you would apply the same rule in the criminal case? Again, I think the Court shouldn't get into it, but in general, inherent power decisions are treated the same way. But, you know, I could be ---- A defendant who thinks he's been acquitted, 5 minutes later, an hour later, can find out that he's guilty? Well, as the government in this last footnote points out, that does happen in the double jeopardy context with respect to mistaken pronouncements, and this Court has already said that's not a problem. Now, if Justice Kennedy or the jurors haven't been discharged in those instances. In that case, yes, so that's right. So, Justice Kennedy, if you're concerned about that, I suspect that could be something that is determination, the district court's determination as to what is and is not a reasonable response to the problem at hand. And there's no example whatsoever of anything like this hypothetical happening. And that's why, as the Court writes its opinion, we think you should bracket those types of concerns, see if they ever arise. They should first, I think, be dealt with by the Rules Committee, but not in a one-size-fits-all solution by this Court. Roberts. Roberts. The Rules Committee is, I would say, unlikely to address this for the simple reason that it doesn't come up very often. I gather no Federal cases at all. So the Federal Rules Committee probably has bigger fish to fry. How long was the trial in this case? This trial was 2 days. And, Mr. Chief Justice, the Rules Committee does handle a lot of issues that do, you But here, of course, there have been six different Federal circuit courts that have ruled on this issue, which is what the cert petition focused on. So I don't think that this is something that, you know, wouldn't attract the attention of the Rules Committee. And my friend's idea, which is somehow the Rules Committee has already resolved this issue, I think is in tension with that very, very notion. If there are no further questions. Roberts. Thank you, counsel. Mr. Bash. Mr. Chief Justice, and may it please the Court, I'd like to begin by stating very simply what we think the rule is, and in doing so, hopefully clarify something about this case that I think generates a little bit of confusion. The rule we would apply is that if this is a situation where before the discharge, the judge could have sent it back to the jury with a clarifying instruction, then the mere formal pronouncement of discharge does not bar the judge from doing that in a situation where no actual prejudice would result. The reason I said that I think that relates to an area of confusion in this case is that in his argument up here, Petitioner's counsel has characterized this as a weight of the evidence problem. But that's not how Petitioner or the judge understood the problem below. They understood the problem as a legally impermissible verdict that demonstrated that the jurors were confused about the instructions. And Petitioner has not contested, as this case comes to the Court, that the judge could have sent it back to the jury before discharge. I'm not sure that's true if the judge says, well, I think it's against the weight of the evidence. That would arguably be a coercive verdict. So as the case comes to the Court, it is conceded that the judge could have sent it back before discharge. The only question, as I understand it, before this Court is whether the formal pronouncement of discharge irrevocably barred the Court from rescinding the discharge and resubmitting the case. And for the reasons we set out on the brief, we think the prejudice standard comports with how this Court always thinks about jury impartiality issues. In far more extreme circumstances, take the Foundational Remmer decision. That was a criminal case in which a juror, there was an attempted bribe to a juror, and then an FBI investigation of that juror for the attempted bribe. And so the juror had a huge incentive to acquit at that point because he's been bribed by the defendant to, excuse me, to convict because he's been bribed by the defendant to acquit. The FBI knows he's been bribed. And what this Court said in Remmer is it is an actual prejudice determination after a hearing, and it's within the discretion of the district court, subject to abuse of discretion review, how to remedy even that kind of problem. And that's a very significant problem. And it's the same thing when, for example, a judge forgets mid-trial to admonish the jurors to avoid outside influence, which is parallel to the situation here with one caveat, which relates to Justice Kagan's question earlier, in that the jurors are exposed to outside influence without an instruction. And even in that case, courts have been uniform in saying – courts have been almost uniform – I think there's an Eighth Circuit decision that went the other way – in saying that you conduct a prejudice inquiry. Now, Justice Kagan's question was, is there something different post-discharge? And I think it may be reasonable to think that at some point post-discharge is kind of like getting out of the bar exam, where you've studied all this stuff, you remember it, but now the commercial paper information is, you know, receding from your brain in a way that it wouldn't before the bar exam. But I don't think that's – and I think a district court could properly take that into consideration, but I don't think that's true a few minutes after the discharge. It's one thing to say when you get home and you go back to your spouse or your friends and you say, this is what we did, and they say, wow, I can't believe you did that, that that's going to cause you to start to reconsider your verdict as a citizen, not with the juror hat on. But here it was a few minutes. Everybody concedes it was a few minutes. At the time, Petitioner's counsel – I think this is on 27A of the PEDAP – said, I don't think the jurors talked to anybody about the case. They were talking to the clerk about other stuff, about reimbursement. Didn't talk to anybody about the case. It was a few minutes. And given that where a juror is attempted bribed, where jurors sleep through trial, where jurors are actually exposed to extraneous information, where jurors speak to counsel, we always conduct a prejudice inquiry. It would be entirely anomalous to say, in this one circumstance, there's a three-minute break, you can't bring the jurors back and recommit it. Sotomayor So why can't we recall a jury six months later? Just this case. I mean, they didn't talk about it afterwards. It's not a earth-shattering case. Why can't we call them back the next day, the day after, just ask them, did you talk to anybody? They say no. Can you go back and resubmit the case now? Petitioner has – we don't think that would be possible. Why? Give me the limiting evidence. Because of the prejudice standard. We think the standard is actually – You haven't shown any prejudice. They didn't talk with anybody about the case. They didn't – I think it would be reasonable for – so I guess we're in a situation where six months later some party says we'd like to call the jury. I'm talking about one to infinity, because if – presumably, I'm interested in some limits to this. And we think it would be reasonable for a district court to say, and even for this court to say as a matter of giving guidance to lower courts, that once jurors have a case, they've taken off their juror hats for more than a very de minimis period, it's so likely that there's going to be prejudice that we're just not going to allow that anymore. I'd also say there's a more formal limitation, which this Court has said in cases like Casey and Quackenbush, that once final judgment is entered, a court can't rescind interlocutory orders. I think there would be a question about when that occurs in this case. We don't think it would ever get that far under the prejudice standard, but it might just be when the Rule 58 judgment is entered, which in this case happened the same day as the second verdict. In a case I did last year, it happened five days later. It often happens very soon. Or you might say that once the notice of appeal is filed or once the time is expired for filing post-verdict motions, that's when the final judgment occurs. So there would be that more formal bound on the time limit, but I think in practice there would be an actual prejudice limit that would bound it very tightly. And I just want to emphasize, this case has come up, this issue has come up for the United States. It's come up in actually a surprising number of lower court cases. And if you look at the cases cited in both parties' briefs, they're almost invariably very short periods. I mean, this is a judge wanting a do-over after a few minutes where he made a mistake. This is not people calling things back months later. There was the five-month case the Petitioner cites, but as Mr. Cott, you all noted, that was reversed as gross error by the California Supreme Court. We don't think our standard would allow that, but where there's a minutes-long error, judges ought to have the opportunity to fix that if they can. And I know Mr. Chamigam said that it hasn't been the case in any of the cases cited in the briefs that juries retired for future deliberations, but actually one of the circuit-split cases that the United States was involved with, the Third Circuit case Figueroa, the judge discharged the jurors and then realized there was a bifurcated felon in possession count to try. And it was only a few minutes, and the judge brought them back, and they were re-instructed. There was evidence presented on that count, and then they deliberated further. So it does happen. It's rare, hopefully, because it's a mistake, but it's not so rare that I think it warrants a bright-line rule that would impose really serious costs on parties in litigants. If there are no further questions. Roberts. Thank you, counsel. Four minutes, Mr. Chamigam. Thank you, Mr. Chief Justice. The rule that we are proposing to the Court is a simple one. It is that, consistent with the common law and the Federal rules, a district court lacks the authority to recall discharged jurors for further service in the same case, with discharge being defined as the point at which a jury released from service leaves the judge's presence and control. In writing an opinion in that direction, we would respectfully submit that the Court should reiterate that district courts have multiple available remedies to cure the perceived problem here. Again, we do freely concede, as Mr. Katyal points out, that a district court has the authority to order the jury to engage in further deliberations prior to discharge, and that will take care of many of the cases in the category of obvious errors. After discharge, it is true that a court has the authority to recall jurors, but not for the purpose of reconstituting them as a jury. Instead, simply for the purpose of correcting clerical errors and other oversights in the judgment.  Ginsburg. And I'm not sure that that's the case with clerical errors. But you said and others. So what's the others? Katyal. Well, I think that the others are these cases like the ones I referred to in my opening argument, where, you know, a jury returns two verdict forms and the question is which verdict form is the correct one. In other words, courts have the authority to deal with situations where what you're trying to do is to intuit the jury's intent at the time of the original verdict, to take evidence on historical facts concerning what the jury actually did. And the relevant Federal rule of evidence, Federal Rule of Evidence 606b, makes clear that that is an exception to the ordinarily applicable rule that evidence from jury deliberations is inadmissible. And, of course, finally, the last available remedy is to order a new trial. And again, however you characterize the error at issue here, whether you characterize it as a verdict that's contrary to the weight of the evidence or an instructional error, a new trial has always been the default remedy in those circumstances. I think that the problem with Respondent and the government's rule was well pointed out in Mr. Bash's argument, to the extent that the driving concern here is prejudice. The government's limitations, proposed limitations, really don't make a lot of sense, and neither does Respondent's suggestion made for the first time in oral argument today that there is a limitation on the time period in which juries can be recalled. And that is for the simple reason that you can have a jury that's been out for a long period of time where you don't have prejudice, and conversely, you can have prejudice almost instantly, particularly in the world of smartphone communications. And the rule that this Court articulates here is going to apply in civil and criminal cases alike. And, Justice Ginsburg, the final judgment limitation really provides little solace in the criminal context, because when a jury returns a verdict, final judgment is typically not entered until after sentencing, which, again, typically takes place sometime later. And at bottom, the question in this case is really whether extending a court's power beyond the point of discharge is worth the candle. And again, in light of all of the available alternatives in this situation, we would respectfully submit that it is not, and that the judgment of the Ninth Circuit should therefore be reversed. Thank you. Roberts. Thank you, counsel. The case is submitted.